SPEAR and RIPLEY, appellants, *agt.* WARDELLS, respondents.

*Questions discussed.*

1. Whether the assignment which a debtor executes under the non-imprisonment law, (*Stat.* 1831, *p.* 400, §§ 16, 17,) is for the benefit of all his creditors, or whether the assigned property goes exclusively to the creditor who institutes the proceedings?

2. Whether a creditor, by commencing proceedings under the non-imprisonment act of 1831, (although he acquires no lien upon the property of the debtor,) acquires a *preference* over other creditors, which cannot be defeated by a *voluntary assignment* made for the benefit of creditors generally?

3. Whether a transfer of a debtor's property to a voluntary assignee, during the pendency of proceedings against him by a creditor under the non-imprisonment law of 1831, is a fraud upon the law and the creditor instituting such proceedings, which a court of equity will not permit? ·

C. Flint Spear and Geo. B. Ripley, the appellants, merchants in the city of New-York, doing business under the firm of Spear & Ripley, on the 2d Nov., 1846, recovered a judgment in assumpsit for a partnership debt, in the supreme court, for $1,376.97 damages and costs, against Charles Wardell and Charles E. Wardell, two of the respondents.   Spear & Ripley, on the 5th Nov., 1846, made a request and demand of the respondents, C. and C. E. Wardell, that they apply some bills, notes, and accounts, as were of value, which they had and owned, to the payment of appellants' judgment, which said respondents refused to do.   And on said 5th Nov. the appellants applied to Hon. JOHN W. EDMONDS, circuit judge of the supreme court, for a

warrant to arrest the respondents, under the fifth section of the "Act to abolish imprisonment for debt, and to punish fraudulent debtors," passed April 26, 1831; and upon adducing satisfactory evidence to said judge by affidavit, that there was a debt due to the appellants from said respondents amounting to more than fifty dollars, and specifying the nature and amount thereof, for which said respondents could not be arrested or imprisoned according to the provisions of the first and second sections of said act, and that the respondents had rights in action and evidences of debt which they unjustly refused to apply to the payment of said judgment; the said circuit judge thereupon issued his warrant as provided in the fifth section of the said act, by virtue of which the respondents were brought before said judge on said 5th Nov., 1846, and on their appearance controverted the facts and circumstances upon which the warrant issued. The hearing was adjourned from time to time, and proofs were offered by the respective parties, and such proceedings had that on the 20th Nov., 1846, the judge decided that the allegations of the appellants were substantiated, and that a commitment issue, as provided by the ninth section of said act, to commit said respondents to the jail of the city and county of New-York.

An adjournment was had, by consent of parties, to the 15th Dec., 1846, and in the mean time the respondents, upon affidavits, applied to the special term of the supreme court for a writ of certiorari, for the purpose of reviewing the proceedings before the judge : this application was denied. The respondents, C. and C. E. Wardell, thereupon severally made and delivered to the circuit judge, under the third subdivision of the tenth section of said act, an inventory of their respective estates, and an account of their creditors, upon which such proceedings were had under that section of said act that, on the 22d Dec., 1846, the circuit judge granted to the respondents the discharge provided for in the 17th section of said act.

On the 21st day of November, 1846, pending the proceedings before the circuit judge, and before his decision ordering a commitment, the said respondents, C. and C. E. Wardell,

executed an assignment to Henry B. Wardell, (one of the respondents,) a son of said Charles Wardell, of all their co-partnership property and effects, in trust to pay all their copartnership debts and liabilities, *pro rata ;* and that said Charles Wardell also on the same day assigned to the said Henry B. Wardell all his individual property and effects, in trust, to pay all his individual debts and liabilities, *pro rata,* and then to apply the surplus, if any there should be, to pay all his other debts and liabilities *pro rata.*

Stephen P. Nash, Esq., was appointed by the circuit judge the sole assignee under the 17th section of said act, (1831;) no property was delivered to said assignee, as being specified in the respective inventories of the respondents, except $30 in money; all the other property specified in such inventories being saved from the effect of such assignment by the order for the assignment made by the circuit judge, as being property exempt by law from execution.

Upon these facts, substantially stated, Spear and Wardell filed their bill against all the respondents in the court of chancery, and charged that at the time of the issuing of the warrant under said act, and of the arrest of said C. and C. E. Wardell, they owned and were possessed of a large amount of property, of the value of between twenty-eight and thirty thousand dollars, consisting of things in action and evidences of debt, bills, notes, and accounts belonging to the firm, and of real estate situated out of this state, belonging to Charles Wardell individually, of the value of less than $10,000. That the whole of such bills, notes, accounts, and evidences of debt, belonging to said firm, were delivered to Henry B. Wardell, the voluntary assignee, under the assignment of Nov. 21, 1846; and that said real estate of said Charles Wardell was also conveyed by his individual assignment of that date to said Henry B. Wardell.

The bill further charged that the debts and liabilities of the firm of the respondents, C. and C. E. Wardell, amounted, at the time of their arrest, to about $200,000, and that they and each of them were utterly insolvent. That said firm, or either

Spear & Ripley *agt.* Wardells.

of them, had no real estate in this state upon which appellants' judgment was or could in any way be made a lien. That said judgment remained unpaid, and was in full force and effect, not reversed or satisfied.

The bill alleged that under the proceedings had before the circuit judge, the appellants acquired, under and by virtue of the provisions of said act, a lien, from the time of the arrest of said C. and C. E. Wardell, upon such rights in action and evidences of debt, or so many thereof as would be sufficient to pay in full the sum due to appellants upon said judgment; or a right attaching at the time of said arrest to a priority of payment of said judgment out of such rights in action and evidences of debt; or a right to have such rights of action and evidences of debt, at the time of such arrest, inventoried and assigned to an assignee appointed under said act, to be by him or them administered according to law; which lien or right could not be discharged, except by the payment, or by security for the payment of said judgment, as provided in the first and second subdivisions of the tenth section of the said act; and therefore charged, that the assignments to said Henry B. Wardell, so far as they might have included any rights in action and evidences of debt, were a fraud upon said act, and upon the rights of appellants acquired thereunder.

If such assignments were not fraudulent in this respect, the said Henry B. Wardell, nevertheless, took the rights in action and evidences of debt which the respondents had at the time of such arrest, under the decision of the circuit judge, charged with the payment in full of the judgment of appellants, in preference to any claim or claims of any other creditor or creditors.

The bill alleged that the appellants had, by their attorneys, applied to said Henry B. Wardell to pay their said judgment out of the rights in action and evidences of debt so assigned to him, or to admit the same as a claim to be paid in full out of said rights of action and evidences of debt, (there being an amount more than sufficient for such payment,) in preference to other claims provided for by the assignment, which said Henry B. Wardell refused to do.

The bill prayed that the said assignments to said Henry B. Wardell might be declared void, and set aside as a fraud upon the said act, and the rights of the appellants acquired thereunder, or other right of appellants acquired by said proceedings of appellants, or that said Henry B. Wardell might be compelled to pay said judgment if the assignment to him was allowed to stand, or deliver over the property so assigned to him to said Stephen P. Nash, the assignee appointed under said act, to be disposed of under said act. Also that a receiver be appointed, and injunction issued, &c.

Charles Wardell, Charles E. Wardell, and Henry B. Wardell, the respondents, put in their joint and several answer. Admitted, that Charles and Charles E. Wardell were partners, and the appellants' judgment, as stated in the bill, That on the said 5th day of Nov., 1846, said firm then owned, as such partners, rights in action and evidences of debt, consisting of promissory notes, bills, and accounts, amounting in value to more than sufficient to pay said judgment of appellants; and that on the day aforesaid, appellants requested both members of said firm to apply some of such bills, notes, and accounts to the payment of said judgment: that in reply to such request respondents stated truly, that a committee of the creditors of said Charles and Charles E. Wardell had been examining their business affairs, and had estimated that their assets, including the real estate and household furniture owned by Charles Wardell individually, would produce about $28,000; and that their just debts and liabilities amounted to about $200,000; and had united in a report, recommending to the creditors of the firm to compromise and settle said debts and liabilities; that they intended to call a meeting of their creditors on Saturday of that week, or on Monday of the week next thereafter, and inform said creditors fully of the state of the affairs; and if the said creditors should not all agree to act upon the recommendation of said committee, they should assign all their property to pay all their creditors alike: that they were unwilling to give to said appellants a preference over other creditors, and would not give any of their other creditors a preference over the appellants.

Spear & Ripley *agt.* Wardells.

The answer denied that respondents, other than' as before stated, refused to apply some of such notes, bills, and accounts as were of some value to the payment of appellants' judgment. Also admitted the issuing of the warrant and the proceedings had before the circuit judge, as mentioned in the bill. And that said respondents, after the decision of the supreme court denying their application for a certiorari, appeared before said judge, and in order to prevent, as provided in the tenth section of said act, the granting of a commitment, severally made and delivered to the officer, under the third subdivision of the said tenth section, an inventory under oath of their respective estates, and an account of their creditors; and severally prayed that their property and estate, respectively, might be assigned as required by the provisions of said act; and that said officer would also grant to them respectively a discharge, according to the provisions of said act; that said appellants opposed the granting of said discharge, on their allegation, which was admitted by respondents respectively to be true, that they had, after their said arrest, and before the said decision of said officer, made by him on the 28th Nov., 1846, executed the assignments in said bill mentioned to Henry B. Wardell; and also on the ground that said respondents having made such assignments pending said proceedings, their proceedings were not just and fair, and were a fraud upon said act, and upon the rights alleged by appellants to have been acquired by them by their proceedings, under said act. That on the 21st day of December, 1846, the officer decided that appellants had failed to satisfy him that the proceedings on the part of the respondents, C. and C. E. Wardell, were not just and fair, and had also failed to satisfy him that said respondents had concealed, removed, or disposed of any property with intent to defraud their creditors; and did thereupon order that the property of said respondents, except such as was by law exempt from execution, should be by them respectively assigned to Stephen P. Nash, Esq., counsellor at law, New-York. That in compliance with such order, respondents, on said 21st Dec., 1846, severally executed such assignment; and that on the said 21st Dec., 1846, the said officer

37

granted to the said Charles Wardell and Charles E. Wardell, severally, the discharge provided for in the seventeenth section of said act.

The answer proceeded to controvert the several allegations in the bill, that the appellants had acquired a lien upon, or right to a priority of payment out of the said property of the respondents; and that the assignment to Henry B. Wardell was a fraud upon the said act and upon appellants' rights acquired under the aforesaid proceedings, &c.

The cause having been argued upon the bill and answers therein, the CHANCELLOR, on the 4th of August, 1847, dismissed the bill with costs.

From this decree Spear and Wardell appeal to this court.

*F. W. Walker, Attorney, and*
*Stephen P. Nash, Counsel* for appellants.

*First.* The creditor who has obtained the commitment of a fraudulent debtor, under the non-imprisonment act, is entitled to a preference over creditors at large, in the distribution of the debtor's property under the act. (*People* v. *Abel,* 3 *Hill,* 109; *Berthelon* v. *Betts,* 4 *Hill,* 577; *Moak* v. *De Forest,* 5 *Hill,* 605; *Practical Directions under Non-Imprisonment Act, pamph. p.* 15.)

1. There are no provisions in the act for the joinder of several creditors, or for the coming in of a subsequent creditor under the proceedings instituted by the first. At the outset the proceeding is an individual one. (*Non-Imp. Act, Laws of* 1831, *p.* 396, §§ 3, 4, 7.)

2. All the causes for granting the warrant are such as *may* apply to individual creditors, and some of them such as would not ordinarily apply to all the creditors. (§ 4, *sub.* 1, 2, 4.)

3. There are no provisions in the act for securing the rights of others than the prosecuting creditor, by notice of any sort. (§ 14; § 10, *sub.* 3; § 21.)

☞ Notice to the prosecuting creditor—and to none other—persons imprisoned. ☜

4. All the means of averting commitment, unless it be by assignment of the debtor's property, enure to the benefit of the

. Spear & Ripley *agt.* Wardells.

prosecuting creditor exclusively. (§§ 10, 24; *Laws of* 1845, *p.* 238; *Laws of* 1846, *p.* 255; 1 *R. S.*, 2*d ed.*, *p.* 789.)

5. There is nothing in the act showing that the discharge by petition and assignment is an exception to the general tenor of the act.

(*a*) The petition, account and inventories are assimilated to similar proceedings under art. vi, tit. 1, chap. 5, of Part I of the revised statutes, which are for the benefit of the creditor or creditors at whose suit the debtor is charged in execution.

(*b*) The reference to art. v, for the effect of the assignment, is only for the purpose of ascertaining what property the assignment passes, and the period from which it relates. It does not determine who are to be the distributees.

(*c*) The requirement of the 18th section of the act, that the assignees " shall make dividends," can be satisfied without a general distribution, as well as without an equality of distribution. The term " dividend " does not exclude priorities in distribution; nor a limited distribution. See 1 *R. S.*, *p.* 803, § 37, where dividends are provided for, yet certain priorities declared.

*Second.* If the creditor who has obtained a commitment is entitled to a preference of payment out of the debtor's property, any voluntary disposition of that property by the debtor, pending the proceedings and in order to defeat such preference, is a fraud upon the statute, and a court of equity has jurisdiction to protect the creditor's right and set aside the fraudulent act. (*Matter of Hurst*, 7 *Wend.* 239; *Wood* v. *Bolard*, 8 *Paige*, 556; *Hadden* v. *Spader*, 20 *John.* 554; *M'Dermutt* v. *Strong*, 4 *John. Ch. Rep.* 687.)

*Third.* If this jurisdiction can be exercised at all, it can only be in behalf of the creditor whose priority has been overreached. He is, therefore, the proper party complainant.

☞ The assignee does not date back of the assignment—he could not overreach the fraudulent assignment—and only takes the property mentioned in the inventory—and here there was none. (5, 16; 1 *R. S.* 788, §§ 8, 9; 781, §§ 2–8; 8 *W.* 339, 348.)

Objection, want of parties—not having been taken in

. Spear & Ripley *agt.* Wardells.

answer, or in any other way, if valid, should be allowed to amend.

*Fourth.* The discharge does not conclude as to the creditor's right. The discharge is statutory, and has only the effect given it by the statute, which is merely to exonerate the debtor from being further proceeded against *under the act.* (*Non-Imp. Act,* § 17.)

*Fifth.* The decree of the chancellor should be reversed, and the defendant, Henry B. Wardell, be decreed to pay the complainants' judgment with interest and costs.

*J. S. Bosworth, Attorney and Counsel* for respondents.

*First.* The bill does not allege that C. and C. E. Wardell assigned their property with the *actual intent* to defraud their creditors generally or the appellants in particular. And had it so alleged, the appellants were not in a position to file a bill, at the time of filing this, to set aside the assignments, even if they were in fact fraudulent as against them. The bill does not allege that an execution had been sued out on the judgment, and none could have been issued and made returnable at the time it was filed. (1 *Paige,* 305.)

*Second.* The whole claim of the appellants is based upon the erroneous supposition, that by claiming against C. and C. E. Wardell that they had unjustly refused to apply their choses in action to pay the appellants' judgment in full and convicting them thereof, they acquired a specific lien on or right to the property of these debtors, real as well as personal, individual as well as copartnership, entitling them absolutely to have such property applied to pay their judgment in full to the exclusion of other creditors. (*See Bill, fols.* 25 *to* 31, *and* 42 *to* 46.)

It is sought to construct this claim upon the hypothesis that an assigment, made by a debtor after conviction to procure a discharge, enures to the exclusive benefit of the prosecuting creditor; and that after his arrest, and while the proceedings are pending, he cannot make a valid assignment, except to a statutory assignee to avoid a commitment after conviction: this hypothesis is entirely erroneous, because

1. The act nowhere provides that the prosecuting creditor shall acquire such lien on or right to the debtor's property; or that such an assignment shall be for the exclusive benefit of the prosecuting creditor; or that pending the proceedings the debtor can make no valid disposition of his property.

2. The whole scope and tenor of the act are directly hostile to the rights and construction contended for by the appellants. As originally passed, subdivision v, of § 10, (*Session Laws of 1831, p. 398,*) allowed a debtor, convicted of any fraud, to obtain a discharge, on giving to the plaintiff a bond with sureties, " conditioned that he will not remove any property which he then has out of the jurisdiction of the court in which such suit is brought, with the intent to defraud any of his creditors; and that he will not assign or dispose of any such property, with such intent, *or with a view to give a preference to any creditor,* for any debt antecedent to *such assignment or disposition,* until the demand of the plaintiff, with the costs, shall be satisfied, or until the expiration of *three months* after a final judgment shall be rendered in the suit brought for the recovery of such demand."

This provides *against* preference and priority of payment as absolute rights. The debtor, though convicted of fraud, and having given this bond, may sell, exchange, and assign his property if his assignment creates no preferences. A creditor not proceeding under the act, and first obtaining a judgment, may levy on the debtor's property subject to execution; and first procuring an execution returned unsatisfied, may file a creditor's bill and reach the debtor's choses in action, to the exclusion of the creditor proceeding under the act of 1831.

This view of itself answers the claim made, that by initiating a complaint under this act, and subsequently convicting the debtor, the prosecuting creditor acquires a lien on or right to an application of the debtor's property attaching at the time of the issuing of the warrant or of the arrest, to pay his claim in full to the exclusion of other creditors.

3. This 5th subdivision of § 10 was found of no avail in the class of cases where the complaint was, that the debtor had

Spear & Ripley *agt.* Wardells.

already disposed of his property with intent to defraud his creditors. With a design to obviate this difficulty, chap. 418 of Laws of 1837, (*page* 466,) provided that the 5th subdivision of § 10 of the act of 1831 "shall apply only in cases where the particular fraudulent design established against the defendant is only that specified in the first subdivision in the fourth section of the act hereby amended." This act gives no right to the prosecuting creditor, over the general creditors, to the debtor's property, either before or after an assignment to a statutory assignee, not given by the act of 1831—it prescribes to the statutory assignee no new rule of distribution. It creates no new inhibition to the exercise of the debtor's right to dispose of his property at any time for the benefit of all his creditors without preferences.

The whole scope and force of the provisions of the act as thus amended would seem to amount to this and no more: If he is convicted of the fraudulent intent specified in subdivision 1 of § 4, he may be discharged on giving the bond prescribed by subdivision 5 of § 10. Then what lien on or right to the debtor's property has the prosecuting creditor acquired? None at all. He has security that the debtor shall not remove it from the jurisdiction of the court or assign it with a view to prefer debts antecedent to assigning it. The force of all proceedings had or which can be had under the act to reach the property is then spent. If reached at all, it must be by execution, or creditor's bill. If so reached, it is by proceedings independent of the act. And other creditors may come first with an execution and creditor's bill, and take the whole property. The debtor may honestly sell it for its fair value in money. The prosecuting creditor, if he gets any thing, must reach this money. The arrest does not operate as an injunction to suspend the debtor's general power to dispose of it, nor does it impair his title to it, or suspend his right to transfer it.

If a debtor is convicted of either of the frauds specified in the 2d, 3d, and 4th subdivisions of § 10, he may still be discharged under the 3d subdivision of the latter section, on executing an assignment of all the property he has at the time of

Spear & Ripley *agt.* Wardells.

executing the same, (§ 16 *of Act of* 1831, 2 *R. S. p.* 30, § 9, *and id. p.* 21, § 28,) unless the opposing creditor satisfies the officer " that the proceedings on the part of the petitioner (the debtor) *are not just and fair,* or that he has concealed, removed or disposed of any of his property, with *intent* to defraud his creditors." If the officer is satisfied that the proceedings are unjust and unfair, or that the debtor has concealed, removed, or disposed of any of his property with *intent* to defraud his creditors, a discharge will be denied and the debtor committed and kept in custody as a prisoner on criminal process. (§ 11.)

What lien on or right to the debtor's property has the creditor acquired by force of these proceedings, or to what extent has he destroyed his power of alienation? If the debtor chooses to remain in jail, his property cannot be reached under the act of 1831. Any other creditor who has prosecuted his claim to judgment and execution may levy on any thing which can be seized upon by execution; and if he has an execution returned, may file a creditor's bill and acquire a priority of right to all that an execution will not reach. The debtor may still do what equity declares to be just and fair, viz., assign all his property for the benefit of all his creditors without any preferences between them.

By the act of 1840 (*page* 320) the debtor, on being arrested on a warrant, in order to procure an adjournment of the proceedings, must give a bond with sureties, " conditioned that, until the final decision of the matter pending before such officer such defendant will not remove any property which he then has out of the jurisdiction of the court in which the suit in which such warrant was issued is brought, with intent to defraud any of his creditors; and that he will not assign or dispose of any such property with intent or with a view to give a *preference* to any creditor *for any debt antecedent to such assignment or disposition.*"

The original act, and the act as amended, leave the debtor free to devote all his property at any time among all his creditors without preferences. Not only that, it seems to be continually inviting him, both by its terms and spirit, to atone

civilly for any fraudulent intent or act of his, by making such a disposition of it. The creditor acquires no rights making it unjust or unfair toward him, for the debtor to so assign it, or which can impair the debtor's right, or absolve him from the equitable duty existing at the time of his arrest to so assign it. (*Townsend* v. *Morrell,* 10 *Wend.* 577; *Wood* v. *Bolard,* 8 *Paige,* 556; *Bank of Rochester* v. *Emerson,* 10 *id.* 359; *Jackson* v. *Cornell et al.,* 1 *Sandford,* 348.)

*Third.* If the position that an assignment to a statutory assignee will enure to the exclusive benefit of the prosecuting creditor is tenable, it will not help the appellants in this case, unless the court go further, and hold that the debtor after his arrest and before conviction has no right as against the prosecuting creditor to assign his property for the equal benefit of all his creditors. If he has that right, then the assignments in question are valid, although the appellants may receive the whole benefit of the assignment subsequently made to the statutory assignee. The question of the right of the debtor to make an assignment of his property pending the proceedings without preferences, is not necessarily dependent upon or connected with the question, who are to participate in the proceeds of the property assigned to a statutory assignee?

*Fourth.* But the proceeds of property assigned under this act are to be distributed *pro rata* among all the creditors. This is so, because,

1. No part of the act declares that the prosecuting creditor shall alone or be first paid.

2. The assignment under this act (§ 16) is to be in the same manner, and with the like effect, as provided and declared in the 5th article of 2 R. S. p. 28. Such an assignment is for the *pro rata* benefit of all the creditors. (2 *R. S. p.* 47, § 36, *sub.* 3.)

The object of the 5th article is to exempt the debtor from arrest or imprisonment, "by reason of any debts arising upon contracts made previously," to the execution of an assignment. (2 *R. S. p.* 28, § 1; *id. p.* 30, § 10.) All the creditors in that case participate equally in the assigned property, whether their demands are due or not due.

· The act of 1831 is a substitute for this 5th article. It abolishes imprisonment for debt absolutely, and enables credit-·ors on proof of certain frauds having been committed, or of the intent to commit them, to have the debtor imprisoned, or to coerce from him an assignment of his property, or security, as the case may be, that he will not, within a stated period, assign with intent to defraud creditors, or with a view to prefer ante-cedent debts.

If the debtor assigns under the act, an order is granted " which exonerates the .debtor from being proceeded against under the 3d,.4th, 5th, 6th, 7th, 8th, and. 9th sections of the act, by any creditor, entitled to a dividend.(' as hereinafter provided ') for any fraud committed or intended before such discharge," whether it be a fraud of which he has been con-victed or not, or one of which the prosecuting creditor could complain or not.

The discharge being granted, there is no creditor who can imprison under the act, (if all are entitled to dividends,) and the debtor stands precisely as he would on obtaining a dis-charge under the 5th article. He is discharged from imprison-ment .on all contracts, and all creditors share *pro rata* in his estate.

The only question is, What creditors are entitled to a divi-dend as " hereinafter provided ?" Justice BRONSON intimated in the 3*d of Hill, People* v. *Noble,* 109, 112, that only those creditors " who have (then) applied or are (then) entitled to apply for a warrant for the arrest. of the debtor under the 3d section of the ' act," are entitled .to dividends. This clearly cannot be so ; for by the 12th section of the act, " any person against whom *any* suit shall have been commenced in a court of record " on contract, in which the debtor cannot be held to bail, though he has committed no fraud, may present a petition praying that his property may be assigned, and that he may have the. benefit of the ·provisions of this act. He makes the assignment and obtains his· discharge. No creditor is entitled to a dividend under this rule, because none has then applied, or can then apply for a warrant for the arrest of the debtor.

Spear & Ripley *agt.* Wardells.

Yet it must be conceded that the assignee, under the act, is to make dividends by some rule, no matter of what fraud the debtor has been convicted, or whether he assigns without having committed or intending to commit any fraud.

By § 14, notice of presenting the petition is to be served on the plaintiffs prosecuting, their personal representative, or attorney. No notice is required to be served on the other creditors, for the reason that the plaintiffs represent *all*, so far as the benefits and effects of assignment are concerned, if one be made. But the plaintiffs are not the only creditors entitled to oppose the application. By § 15, *any creditor* of the petitioner may oppose, and examine the petitioner, his wife, or any other witness, and have subpœnas to compel the attendance of witnesses, though he has not applied, and could not apply for a warrant, which is absurd if he has no interest in the question and is not entitled to dividends.

3. If the rule of distribution intimated by Justice Bronson, in the *People v. Noble*, be the true one, then what creditors would be entitled to dividends? Suppose the fraud alleged and established be that specified in subdivision 1 of § 4, it is as much a fraud upon one creditor as another. In such a case every creditor may apply for a warrant, for every one is equally defrauded. Then every creditor would be entitled to dividends.

If the fraud alleged and established be that specified in the first clause of subdivision 2, or either of those named in subdivision 3, it is as much a fraud upon each, as either creditor, and each one has the same right to apply for a warrant. By this rule any creditor should receive dividends.

If it be said that none can apply except those whose debts are due, then this rule would exclude only those whose debts were *not due*. This principle of discrimination would be in direct conflict with article 8. (2 *R. S. p.* 40, § 38.) The latter section gives to creditors, whose debts are not due, the same right to dividends as to those whose debts are due. The only exception to the rule is in proceedings under article 6.

Section 18 of the act of 1831 vests the assignee with the "rights and powers," subjects him "to the same duties, obliga-

tions.and control, *in all respects,*" as specified in the 8th article, and directs that he "shall make dividends." One general duty is, in all cases, to divide *pro rata* among all creditors, except a single specified case. Shall he make dividends according to the *general rule,* or follow the law of the excepted case, and give all to the prosecuting creditor?

If the conviction be under the last clause of subdivision 2, or under subdivision. 4, it is true that *the* charge made by the complaining creditor is one which perhaps no other creditor can then or at any time make. But it would seem to be equally true, that if an assignment be made under the act of 1831, no matter what the fraud charged, the assignee must make dividends by a fixed and inflexible rule. The only question is, Among whom? Obviously, among all. All would take under an assignment under article 5. The act of 1831, in its general scope, is a substitute for that. Both look to securing freedom from imprisonment on all contracts, on complying with their respective provisions.

For almost every specified cause of arrest under the act of 1831, every creditor can apply for a warrant. Those who cannot apply cannot imprison the debtor, and the discharge secures the debtor obtaining it against imprisonment for "any fraud committed or intended before such discharge." (*Sec.* 17 *of Act of* 1831.) That discharge being granted, there is no creditor who can imprison, and the debtor stands precisely as he would on obtaining a discharge under the 5th article, and his creditors,should clearly be left with like rights, viz., to receive *pro rata* dividends.

The debtor obtaining a discharge under article 6, might be imprisoned the next day at the suit of any other creditor. (2 *R. S. p.* 32, § 11.) That act looks not to a general discharge from imprisonment on all previous contracts, but only to a discharge from the particular executions on which the debtor is then in prison. If the act of 1831 designed only to relieve a debtor to the like extent on his assigning his property, and to give the assigned property to the prosecuting creditor only, why did it not so provide, or at least direct an assignment to

be made " in the same manner " as provided in article 6, and
that it should be " for the benefit of the creditors upon whose
complaint he is convicted," as article 6 declares? (2 *R. S.*
*p.* 32, § 9.) Instead of that, the act of 1831 abolishes im-
prisonment on all debts, and, like article 5, discharges from
imprisonment in proceedings to collect debts, for all frauds
committed or intended prior to the grant of the discharge,
requires it to be made " in the same manner," and declares it
" shall be executed with the like effect as declared in the " 5th
article, and " shall be recorded in the same manner." (§ 16.)
An assignment under article 6 is not to be recorded. (2 *R. S.*
*p.* 38, § 19.) An assignee under the 6th article is not " sub-
ject to the same *duties*, obligation and control *in all respects,*"
as prescribed in the 8th article. (2 *R. S. p.* 38, § 14.) Under
the act of 1831 he is. (*Act of* 1831, § 18.) There is no dif-
ference in the *duties* of the two, except what arises from the
duty in the one case to pay the jail fees and execution credit-
ors, and then pay over the surplus of the assigned property to
the debtor, (2 *R. S. p.* 38, § 15 ;) and from the duty in the other
case, to advertise notice of their appointment of a general
meeting of creditors for adjusting all accounts and demands for
and against the estate of the debtor, and dividing the assigned
property. (*Art.* 8, §§ 8, 27, 36, 38, and 47.) No such notices
are to be published under article 6. (2 *R. S. p.* 33, § 15.)
Under article 6, the debtor is not necessarily required to assign
all his property. (*Id. p.* 32, § 6.) Under the act of 1831, he
must assign *all.* (*Act of* 1831, § 17.)

4. Justice Cowen, in Berthelon v. Betts, (4 *Hill,* 579,) says,
the act of 1831 " refers to article 6, of the revised statutes con-
cerning voluntary assignments by imprisoned debtors, following
out in the main such details as are there prescribed;" and on
this assumption he intimates an opinion that the assignment
enures to the benefit of the prosecuting creditor. In this he is
clearly in error. There are but two respects in which there is
any analogy. One relates to the *form* of the papers to accom-
pany the petition, § 13, the other to the *time* of service of notice
of presenting it prior to its presentation.

. Every other detail, either regulating the proceedings, the assignment, the discharge of the debtor, the duties of the assignee, the effect of the assignment, and of the discharge, and the rights of creditors to dividends, bears no analogy to article 6; but by the express terms of the act the details of other articles are to be followed.

1. "Any creditor of the petitioner" may oppose, examine the petitioner, his wife, and witnesses, as prescribed in the third article, and may require the case to be heard and determined by a jury, § 15, act of 1831. The same proceedings may be had under article 5, §§ 4, 5, and 6. Under article 6, "the court" by whose process he is imprisoned is "to proceed in a summary way to hear and determine the proofs and allegations of the parties."

2. Under article 6, an assignment is to be made by an indorsement on the petition, § 8. Under the act of 1831, an assignment is to be made "in the same manner as under article 5, and to be recorded," § 16, act of 1831. An assignment under article 6 is not to be recorded. (2 *R. S. p.* 38, § 19.)

- 3. An assignment under article 6 is only to be of so much property "as shall be sufficient to discharge the executions on which he (the debtor) shall be imprisoned," § 6. Under the act of 1831 it must, as under article 5, be of "*all his estate,*" § 17.

4. The only effect of an assignment under article 6 is, to vest in the assignee the property assigned, "for the benefit of the creditors upon whose executions he is imprisoned," § 9. Under the act of 1831, the effect is the same as that of an assignment under article 5, which vests in the assignee all the estate of the debtor for the benefit of all his creditors, § 16, act of 1831. (2 *R. S. p.* 47, § 38.)

5. Under article 6, on the assignment being made, the court "orders" the debtor discharged from the executions mentioned in his petition, § 11.

Under the act of 1831, a discharge is granted which exonerates the debtor from being proceeded against by any creditor, who has a claim or demand upon which the debtor cannot be held to bail under the second section of the act of 1831, for

any fraud committed or intended before such discharge, § 17, act of 1831.

6. Article 6 does not subject an assignee to " all the duties, obligations, and control, *in all respects,*" as are prescribed in article 8, § 14.    The act of 1833 does, § 18.

7. Article 6 dispenses with the necessity of publishing any notice calling a general meeting of creditors, § 14.    The act of 1831 does not, but makes the publishing of such a notice necessary, § 18 of act 1831.

8. Article 6 directs the assignee, after paying the jail fees, to pay the creditors who had charged the debtor in execution previous to the exhibition of his petition, and return the surplus to the debtor, after having done that and defraying their expenses, § 15.    The act of 1831 makes article 8 the rule of the assignee's duties, directs him to make "dividends," § 18 act of 1831, and entitles creditors to dividends, although they have neither convicted nor imprisoned the debtor; or made complaint against him, § 17.

9. If the " duty " of an assignee, under the act of 1831, be such as is prescribed by article 8, he would be under " obligation " to pay the debtor five per cent. on the nett produce of all his estate, if sufficient to pay seventy cents on the dollar, until such payment amounted to five hundred dollars.

10. The act of 1831 prescribes the same compensation for the officers and assignees performing any duties under it as are provided by law for "*similar services*" under article 5, § 19, 1831.    By express terms the assignee under this act is compensated for doing the *same services* as are to be performed by an assignee under article 5, and at the same rate, which is absurd, unless the two are to proceed, advertise, and make dividends in the same manner.

It is most clear that the grounds on which Justice COWEN intimated his opinion in relation to the class to be benefited by an assignment under this act are entirely erroneous.    If it was just for him to conclude that such an assignment must be held to follow the analogies of one under article 6, assuming the details of the proceedings to obtain each to be the same, the

same logic would require the conclusion, that, like one under article 5, it is made for the benefit of all creditors, as the essential details to obtain the two, the declared effect of both, and the prescribed duties of the assignee in each case are, in fact, the same.

*Fifth.* By the expression, "*which shall exonerate him from being proceeded against by any creditor entitled to a dividend of the estate of such petitioner, as hereinafter provided, under the third, fourth, fifth, sixth, seventh, eighth, and ninth sections of this act,*" in § 17, *is meant every creditor who has a demand for which the debtor cannot be held* to bail under § 2 of the same act.

By § 2, on a certain *class* of contracts, a debtor can be held to bail as a matter of course, and so could non-resident debtors on any contracts prior to the act of April 25, 1840. (*Ely* v. *Lyons*, 18 *Wend.* 644.) On this *class* of contracts no warrant can be issued for the arrest of the debtor, under any of these enumerated sections. The complaining creditor must show the *nature* of his debt or demand, and that it is not of the *class* for which a debtor could be arrested or imprisoned under § 2.

These specified sections embrace all that relate to the arrest, trial, and conviction of a debtor for fraud, at the suit of all creditors, or any creditor not in the class named in § 2. All the subsequent sections relate to proceedings to be had after the debtor's conviction. These enumerated sections, being the third to the ninth inclusive, were designed to designate *a class* who should receive dividends, and to embrace within that class all creditors to whom the right was not reserved by § 2, to arrest and imprison the debtor. Hence it was that § 12 provides that a debtor *sued* by one of this *class*, although he had committed no fraud, nor intended to commit any, might petition to have his property assigned for the benefit of all such creditors, and for a discharge, and obtain one that would place him in the same position as he would have been with a discharge under article 5, prior to the passage of this act. Hence it is that assignments in the two cases are to be made in the same manner, and with the like effect. Hence it is that the duties of the assignees in the two cases are the same, that they

are to perform similar services, and to be compensated at the same rate. Hence it is that no rights are given to creditors whose debts are due, over those whose debts are not due. Hence it is that the debtor is exonerated from being proceeded against for other frauds than those of which he has been complained of. Hence it is that an act which abolishes imprisonment upon a *class* of contracts, and authorizes the debtor's arrest for a variety of frauds, which from their character must be equally a fraud upon all, provided that all creditors of this *class* shall receive dividends. The enumerated sections mean all creditors who cannot arrest or imprison the debtor under § 2, whether their debt is due or not, and whether they have or have not applied for his arrest.

*Sixth.* The twenty-sixth section of the act of 1831 authorizes a debtor to be prosecuted criminally and convicted of a misdemeanor for either of the *actual* frauds enumerated in § 4. Section 27 provides that upon his conviction, trustees may be appointed to take charge of his estate in the manner provided by article 2, (2 *R. S. p.* 15,) and that such trustees shall be subject to the same duties, obligations, and control in all respects as trustees appointed under said second article. "Such trustees shall pay the debts of such imprisoned debtor, in *the same manner* as hereinafter directed in article 8 of this title, and be subject to the same control, obligations, and responsibilities." (*Id.* § 4.)

The *manner* is no otherwise provided in article 8, than by the general provision, that in case of assignments, or the appointment of trustees of a debtor's estate, under all the articles treated of in article 8, except the sixth, all creditors, as the general rule, shall receive dividends, and that too whether their debts are due or not due. Section 4 of article 2 directs "the debts" paid, and § 18, of act of 1831, directs "dividends" made, and both of them refer to article 8, for the rule and manner of distribution, and there is no rule recognized there but that of equality among all creditors.

They are to make dividends annually, (2 *R. S.* 48, § 43,) so long as any estate of the debtor remains in their hands, and

Spear & Ripley *agt.* Wardells.

may be required to account, by the debtor as well as the creditors. (*Id.* § 48.) No one can doubt that under article 2 all creditors are to be paid *pro rata,* and there would seem to be no ground for claiming that all are not to be thus paid, under an assignment made under the act of 1831.

*Seventh.* The question, whether an assignment under the act of 1831 enures exclusively to the benefit of the prosecuting creditors, and which constitutes the only basis of the relief prayed by the bill, does not arise in this suit. That question can only be raised in a suit between the creditors and the statutory assignee. The proper time to settle that question is, upon calling the assignee to an account under 2 *R. S.* 48, § 48. The court of chancery has no jurisdiction of the question. The statute, which gives whatever of right there may be, designates the court which shall have control of the matter. That must be the supreme court, or the common pleas of the county in which the assignee resides. (*Id.*) An assignee, under the act of 1831, is subjected to the same "*control in all respects*" as prescribed in article 8. That control was vested, in this case, in the supreme court, or New-York common pleas, at the option of the moving party. (7 *Gill and John.* 170.)

*Eighth.* Judge EDMONDS expressly adjudicated, that the making of the assignments in question was not unjust and unfair *toward the appellants,* or a fraud upon any rights they had acquired by their proceedings under the act. (*See answer, fol.* 27–30, *and fol.* 34–38.) His decision of that question is conclusive and final. (*Birdsall* v. *Phillips,* 17 *Wend.* 464; *The People* v. *The Judges of Dutchess,* 23 *Wend.* 360; *Niblo* v. *Post's Administrators,* 25 *Wend.* 280; *Mercein* v. *The People,* 25 *Wend.* 64.) If the decision be not conclusive and final, the only way in which it can be questioned is by reviewing it upon certiorari. It cannot be questioned collaterally. (*The People* v. *Akin,* 4 *Hill,* 606; *Spencer* v. *Hilton,* 10 *Wend.* 68.)

The court of chancery has no jurisdiction of bills in the nature of an appeal or writ of error, to review the decisions of judicial officers or inferior courts. The discharges granted are a bar to all relief prayed in the bill. (*Answer, fol.* 98.)

38

Spear & Ripley *agt.* Wardells.

*Ninth.* If for any reason it could be held that the property passed to the statutory assignee, or that he is of right entitled to be possessed of the same, and to distribute it as such assignee, notwithstanding the assignments of it to H. B. Wardell, then such statutory assignee is the only person, as the representative of all the creditors having any rights resulting from the proceedings under the act, who can file a bill to have the assignments made to H. B. Wardell set aside, and the property delivered and accounted for to him.

DECISION.—Decree of the chancellor reversed, and decree declaring that Henry B. Wardell holds the assigned property as trustee for the complainants to the extent of their debt; and that he pay the same, together with their costs in the court of chancery, out of the fund in his hands.

*For affirmance,* RUGGLES and JONES, JJ.

*For reversal,* JEWETT, BRONSON, GARDINER, WRIGHT, JOHNSON, and GRAY, JJ.

NOTE.—WRIGHT, J.  *Held,* that these assignments (to Henry B. Wardell) were made in fraud of the act, and of the rights of the appellants, acquired thereunder; and it was plainly to be perceived, were so intended by the respondents themselves.  For if, as they then contended, the statutory assignee would take for the benefit of all creditors, why, pending the proceedings, voluntarily make assignments having the like effect? Nothing could be more undoubted than that the respondents contemplated a fraudulent interference with the statutory assignment.

BRONSON, J.—*Held,* that although the appellants acquired no lien upon the *property by commencing* proceedings under the act, they acquired the right to a preference over the other creditors, which could not be defeated by a voluntary assignment; and *the transfer of the property* to Henry B. Wardell was a fraud upon the law and the appellants, which a court of equity should not permit to succeed.

*Reported* 1 *Comstock,* 144.